Johnny **WILLIAMS**, Petitioner-Appellee,

v.

Louie L. **WAINWRIGHT**, Director, Division of Corrections, State of Florida, Respondent-Appellant.

No. 73–3695.

United States Court of Appeals, Fifth Circuit.

Oct. 24, 1974.

William L. Rogers, Asst. Atty. Gen., Miami, Fla., for respondent-appellant.

Timothy J. Armstrong, Miami, Fla. (Court-appointed), for petitioner-appellee.

Before TUTTLE, THORNBERRY and SIMPSON, Circuit Judges.

THORNBERRY, Circuit Judge:

In this habeas case the only issue before us is whether the admission of evidence concerning offenses committed by the petitioner after the alleged crime for which he was then on trial, for the purpose of impeaching his testimony on direct examination that he had committed no such offenses, violated his right to due process under the Fourteenth Amendment. The district judge concluded that it did, but apparently only because he erroneously believed that petitioner had denied the commission of the subsequent offenses in response to a question during cross, rather than direct, examina-

tion. Consequently, he granted the petition. We reverse.

At his Florida trial for breaking and entering and grand larceny, Williams took the stand in his own defense. During direct examination he admitted three prior armed robbery convictions and testified that he had been on parole since 1965. There then occurred this colloquy between him and his counsel:

Q. Have you committed any crimes since you got out on parole?

A. No, sir; I haven't.

App. at 222. The prosecutor, after getting Williams to reaffirm this statement during cross-examination (App. at 271), presented testimony that Williams had in fact committed two robberies since his parole.

As the district judge pointed out in his order, "[w]hether petitioner had in fact committed crimes since his parole in 1965 was clearly a matter collateral to and well remote from the ultimate fact issues in the case." (Unpublished Order at 7.) But it was Williams's lawyer, not the prosecutor, who initiated the inquiry. The law is clear that in this situation the government is entitled to impeach defendant's credibility with evidence that would otherwise have been inadmissible, even if the evidence would have been inadmissible because obtained in violation of the defendant's constitutional rights. *See* Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed.2d 503 (1954); United States v. Nadaline, 5 Cir. 1973, 471 F.2d 340, 346–347, cert. denied, 411 U.S. 951, 93 S.Ct. 1924, 36 L.Ed.2d 413; United States ex rel. Walker v. Follette, 2 Cir. 1971, 443 F. 2d 167; *cf.* Loper v. Beto, 405 U.S. 473, 482 n. 11, 92 S.Ct. 1014, 1019 n. 11, 31 L.Ed.2d 374, 381 n. 11 (1972). Thus, normally inadmissible "other crimes" evidence is *a fortiori* admissible under the rule. United States v. Jansen, 7 Cir. 1973, 475 F.2d 312, 315–316; C. McCormick, Evidence 132 n. 47 (Cleary ed. 1972) ("Illustrative are the cases where an accused takes the stand and makes an overly-broad denial of guilt ('I never'). Numerous decisions allow the prosecutor to rebut by evidence of otherwise inadmissible other offenses.").

In United States v. Nadaline, *supra*, this Court restated the justification for the rule:

> "If a defendant testifies, he puts his credibility in issue. If he lies in the course of his testimony, he lays himself open to attack by means of illegal evidence which otherwise the prosecution could not use against him."

471 F.2d at 347, *quoting from* United States ex rel. Walker v. Follette, *supra*. In the instant case Williams's counsel attempted to bolster his client's credibility by having him deny that he had engaged in criminal activity since being paroled. The prosecutor thereby became entitled to introduce evidence rebutting this "specific false statement made from the witness stand."[1] Loper v. Beto, *supra*.

We are well aware of the arguments made by respected evidence authorities against allowing impeachment on all extraneous or volunteered assertions made during direct examination. 3A Wigmore, Evidence § 1007 (Chadbourn rev. 1970); C. McCormick, *supra*, at 131–33, 416–18. If the question presented here involved merely the wisdom of the practice as a matter of evidence law, we might hesitate. Cases like *Walder* and *Harris*, however, appear to foreclose any due process argument. Accordingly, the

---

1. Although impeachment under this rule is often accomplished by the prosecutor's introducing records of *prior convictions*, in the seminal case—Walder v. United States, *supra*—the government put on a witness to testify about an earlier incident involving the defendant out of which *no conviction* ever resulted. Moreover, we see no reason why criminal activity committed *after* the alleged crime for which the defendant is on trial should not be admissible for impeachment if the defendant specifically denies the activity during his direct testimony. *Cf.* United States v. Long, 5 Cir. 1973, 483 F.2d 1390, 1391.

order granting the writ is reversed and the cause is remanded to the District Court for consideration of petitioner's other claims.

Reversed and remanded.